**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | |
|---|---|
| LEROY DREIBELBEIS, | ) |
|         Plaintiff, | ) |
| vs. | ) |
| | ) Cause No. 3:17-CV-00100-JD-JEM |
| DAESUNG CELTIC ENERSYS CO., LTD., CHALLENGER SUPPLY HOLDINGS, INC., and MENARD, INC., | ) |
|         Defendants. | ) |
| _____ | ) |
| CHALLENGER SUPPLY HOLDINGS, INC., | ) |
|         Cross-Claim Plaintiff, | ) |
| vs. | ) |
| DAESUNG CELTIC ENERSYS CO., LTD., | ) |
|         Cross-Claim Defendant. | ) |

**CHALLENGER SUPPLY HOLDINGS, INC.'S SUR-REPLY TO
DAESUNG CELTIC ENERSYS CO., LTD.'S MOTION TO DISMISS**

Nearly two weeks after Defendant/Cross-Claim Plaintiff Challenger Supply Holdings, Inc. ("Challenger Supply") filed its opposition to Defendant Daesung Celtic Enersys Co., Ltd.'s ("Daesung's") motion to dismiss, Daesung submitted, for the first time, evidence in support of its motion. Nearly three weeks later, Daesung filed a reply brief attempting to lay blame on Challenger Supply for not rebutting evidence which did not yet exist at the time of Challenger Supply's filing. Regardless, Daesung's reply brief concedes that specific personal jurisdiction exists where a foreign manufacturer utilizes a distribution network with the expectation that its products will be purchased in the forum state. *See* Dkt. 44 at 2, 6-8. Here, the evidence shows

that Daesung tasked its distributor with selling its products throughout the United States and organizing a sales network throughout the United States. Further, Daesung oversaw the recall of its products from North America, including the products that were sold in Indiana. By doing so, Daesung submitted itself to jurisdiction here in Indiana.

## Argument[1]

Under the stream of commerce theory of personal jurisdiction, a "'forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.'" *O'Neal v. Bumbo Int'l Trust*, 16 F. Supp. 3d 952, 968 (S.D. Ind. 2014) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980)). This standard is met where a manufacturer "knowingly engages the Indiana market by using distributors and retailers" that sell its products in Indiana. *Id.* at 962. By utilizing a distributor that sells the manufacturer's products to retailers in the forum state, a manufacturer "'submits to jurisdiction in Indiana for claims arising from or relating to those activities.'" *Id.* (quoting *uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425, 430 (7th Cir. 2010)) (brackets omitted). Accordingly, the *O'Neal* court distinguished the Seventh Circuit's holding in *Jennings v. AC Hydraulic A/S*, 383 F.3d 546 (7th Cir. 2004), because there was no evidence in *Jennings* regarding where the product was purchased or if any of the defendant's other products were sold in the forum state. *Id.* at 958.

Here, Plaintiff purchased the product at issue in Indiana, so unlike in *Jennings*, there is no dispute that Daesung's products were sold here. Dkt. 42-1 at ¶2. Further, Daesung expected that

---

[1] Challenger Supply submitted this sur-reply brief only to refute jurisdictional evidence submitted by Daesung for the first time after Challenger Supply filed its opposition to Daesung's motion to dismiss. Accordingly, Challenger Supply addresses only Daesung's arguments with respect to personal jurisdiction. Challenger Supply stands on its opposition brief with respect to Daesung's arguments with respect to Challenger Supply's cross-claim.

its products would be sold in Indiana. Daesung and its distributor, Quietside Corporation (the predecessor in interest to Challenger Supply) agreed that Quietside would have the right to sell Daesung's products throughout the United States of America. *See* Declaration of Sang Woo Lee at ¶7. Daesung tasked Quietside with organizing a sales service network throughout the United States by designating dealers, advertising and promoting Daesung's products, and participating in trade shows. *Id.* Accordingly, there was no doubt that Daesung's products would ultimately be sold Indiana.

When it came time to recall its products from North American consumers, Daesung opted to handle the matter itself and not to go through any distributor. *Id.* at ¶8; Attachment A to Declaration of Sang Woo Lee.[2] While Quietside agreed to support Daesung's recall efforts, it was Daesung that agreed to voluntarily issue a recall in the North American Market – which necessarily included sales that were made in Indiana – and Daesung further agreed to hire its own legal counsel and advisors in North America to facilitate the recall. *Id.* Daesung also insisted on retaining full authority to decide matters pertaining to the recall. *Id.* Accordingly, Daesung also obtained knowledge that its products were sold in Indiana by overseeing the recall of those products from Indiana.

Daesung makes much of the Southern District of Indiana's unpublished order in *Brown v. BMW of North America, LLC*, No. 1:14-cv-00931-JMS-DML, 2016 WL 427517 (S.D. Ind. Feb. 4, 2016). In *Brown*, however, the plaintiff made absolutely no connection between the Indiana retailers and the manufacturer. *Id.* at *4. Moreover, *Brown* did not – as Daesung contends – qualify its holding in *O'Neal*. Rather, *Brown* simply stated that BMW's *interpretation* of *O'Neal* as being contrary to law was incorrect. *Id.* at *6, n. 4. In fact, *Brown* affirmed the holding in

---

[2] Confidential sales and pricing information contained within the contract attached as Attachment A to Mr. Lee's Declaration that is not material to the disposition of this action has been redacted.

*O'Neal*, finding that specific personal jurisdiction exists where a manufacturer knew "that its product would wind up in Indiana, although it used a distributor to supply its product to different retailers throughout the United States." *Id.* (emphasis in original).

Daesung availed itself of the benefits of doing business in Indiana by utilizing a distributor that it agreed would sell its products in Indiana and then overseeing the recall of those products from Indiana; "[t]he quid pro quo flowing from [Daesung's] exploitation of the Indiana market for [its products] is that it 'submits to jurisdiction in Indiana for claims arising from or relating to those activities.'" *O'Neal*, 16 F. Supp. 3d at 962 (quoting *uBid,* 623 F.3d at 430) (brackets omitted). [3]

## CONCLUSION

For each and all of the foregoing reasons, and for those in its prior brief, Challenger Supply respectfully requests that the Court deny Daesung's Motion to Dismiss and award all other just and proper relief.

Dated: December 2, 2017.

Respectfully submitted,

/s/ *Alexander P. Orlowski*
Matthew B. Barr           #26252-53
Alexander P. Orlowski    #30794-29
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone:  (317) 236-1313
FAX:  (317) 231-7433
Email:  mbarr@btlaw.com
Email:  aorlowski@btlaw.com

*Attorneys for Defendant*
*Challenger Supply Holdings, Inc.*

---

[3] Daesung also faults Challenger Supply for not addressing applicable "notions of fair play and justice," but it was Daesung that expressly chose not to address such factors in its opening brief. *See* Dkt. 34 at 6. Regardless, such factors are satisfied here for the reasons set forth in *O'Neal* and Plaintiff's opposition brief. Dkt. 42 at 10-11; *O'Neal*, 16 F. Supp. 3d at 963.

4

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 2, 2017, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF System, which sent notification of such filing to counsel of record for all parties.

/s/ *Alexander P. Orlowski*