UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LEROY DREIBELBEIS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) Cause No. 3:17-CV-00100-JD-JEM |
| DAESUNG CELTIC ENERSYS CO., LTD., CHALLENGER SUPPLY HOLDINGS, INC., and MENARD, INC., | ) ) ) ) |
| Defendants. | ) ) ) |
| CHALLENGER SUPPLY HOLDINGS, INC., | ) ) |
| Cross-Claim Plaintiff, | ) ) |
| vs. | ) ) |
| DAESUNG CELTIC ENERSYS CO., LTD., | ) ) |
| Cross-Claim Defendant. | ) |

## DECLARATION OF SANG WOO LEE

I, Sang Woo Lee, declare as follows:

1. I am an adult individual over the age of eighteen years and am competent to make this Declaration.

2. I was the Director of Defendant/Cross-Claim Plaintiff Challenger Supply Holdings, Inc. ("Challenger Supply"). I have personal knowledge of the facts stated herein and, if called as a witness, could and would testify competently thereto.

3. I am fluent in both English and Korean.

4. Challenger Supply was the successor in interest to Quietside, LLC f/k/a Quietside Corporation ("Quietside"). Challenger Supply is no longer operating as a business.

5. Prior to July 2014, Quietside was a United States distributor of certain products manufactured by Defendant Daesung Celtic Enersys Co., Ltd. ("Daesung"), including Quietside DPW-120A S-Line Condensing Instantaneous Tankless Water Heaters. Quietside distributed certain of such tankless water heaters to Menard, Inc., including Menard locations in Indiana.

6. Quietside was the sole distributor of Daesung tankless water heaters in the United States. By the time Challenger Supply became Quietside's successor in interest, however, Quietside was no longer distributing Daesung tankless water heaters.

7. Quietside and Daesung agreed that Quietside would have the right to sell Daesung's products throughout the United States of America, Mexico, and Canada. Daesung also tasked Quietside with organizing a sales service network throughout the United States by designating dealers, advertising Daesung's products, and regularly displaying Daesung's products at tradeshows.

8. Attached hereto as Attachment A is a true and correct copy of a contract executed by Quietside and Daesung on or about June 19, 2014.[1] In that agreement, Daesung agreed to initiate a voluntary product recall in the North American market, and Daesung further agreed to hire its own legal counsel and advisors in the United States at its own expense to facilitate the recall. Daesung retained full authority to decide matters pertaining to the recall. Quietside agreed to support and assist Daesung in the recall.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on DEC. 1, 2017.

_____
Sang Woo Lee

---

[1] Confidential sales and pricing information in Attachment A that is not material to the disposition of this case has been redacted.

# Attachment A

This agreement, made this 19 th day of June, 2014, by and between Daesung Industrial Co., Ltd. and Quietside Corporation (collectively, the "Parties"), is intended to document the Parties' mutual understanding of the respective roles and responsibilities to ensure that the Parties can effectively and successfully initiate and execute a voluntary recall of certain water heater products manufactured by Daesung and imported/distributed by Quietside in the North American market, and as such, the Parties hereby agree to the following:

1. Daesung agrees to initiate a voluntary product recall in the North American market. To this end, Daesung shall hire its own legal counsel/advisors in South Korea and the U.S. at Daesung's expense; and Daesung shall have full authority to discuss and decide on matters pertaining to the voluntary recall to be undertaken with such outside legal counsel/advisors retained.

2. Quietside, as the importer/distributor, agrees to support and assist Daesung in preparing for and undertaking a voluntary recall of certain water heater products so that the recall can be conducted successfully and smoothly. In particular, Quietside shall, at the request of Daesung, provide all relevant records, documents, and/or any other information reasonably necessary to comply with the reporting requirements under the Consumer Product Safety Act ("CPSA") or any other laws and regulations administered by the U.S. Consumer Product Safety Commission ("CPSC") and/or and Health Canada; and Daesung agrees and covenants that, except as required in connection with the aforementioned reporting and recall or as otherwise required by law or court order, it shall keep all such materials provided by Quietside strictly confidential and that it shall not use such materials for any other purposes. In this connection, Quietside agrees and acknowledges that Daesung shall have full control over the manner and means of performing/fulfilling its obligations under the CPSA or other similar laws/regulations of Canada.  In return, Daesung covenants to Quietside that, with the aforementioned support and assistance from Quietside, it shall conduct all such "recall" activities in accordance with all the rules and regulations as mandated by CPSA and CPSC (and/or their Canadian counterparts).



Quietside further agrees to fully cooperate and give all reasonable assistance diligently and in good faith to Daesung, upon request, for preparing and filing necessary reports and other documentation to the CPSC and/or Heath Canada, including but not limited to a confidential list of all Quietside distributors and retailers of the subject products, and with respect to all other steps required for Daesung to carry out the proposed reporting and voluntary recall of the subject water heater products manufactured by Daesung and imported/distributed by Quietside.   Quietside further agrees that once Daesung files any initial report to the CPSC and/or Health Canada, Quietside will promptly communicate in writing an immediate stop-sale of the subject water heaters to all of its distributors and retailers, the language of

Page 1 of 3

which shall be approved by Daesung (and, if necessary, the CPSC and/or Health Canada) prior to its issuance. Alternatively, Quietside, in its discretion, may provide its distributor and retailer contact information to Daesung for Daesung to communicate the stop-sale directly to these entities. The same obligation of Quietside shall apply to any further communications to Quietside's distribution network as may be required for Daesung to fully implement the subject voluntary recall.

3. All costs and expenses incurred associated with the CPSC and/or Health Canada reporting and recall to be undertaken shall be borne by the Parties as set forth in the Attachment, which is incorporated herein by reference. For any other costs not included in the Attachment, they shall be borne equally by the Parties.

4. For avoidance of doubt and clarification purposes, this agreement contains the entire, mutual understanding between the Parties concerning the CPSC and/or Health Canada reporting and recall to be undertaken, and supersedes all previous discussions, representations, correspondence and writings in respect to the subject matter hereof.

5. This agreement shall be construed in accordance with the laws of the Republic of Korea and said laws shall be applied in the resolution of any dispute hereunder.

6. Any claim, controversy or dispute arising from the execution of, or in connection with, this Agreement shall be settled through friendly consultations between Parties. In case no settlement can be reached through consultations within sixty (60) days from the date of notification by either Parties to the other that it intends to submit a claim, controversy or dispute to arbitration, then such dispute, controversy or claim arising out of or relating to this contract, or the breach, termination or invalidity thereof, shall be settled by the Korean Commercial Arbitration Board under the Rules of the Korean Commercial Arbitration Board before one (1) arbitrator who shall be a national of a third country. The arbitration shall be held in Korea and conducted in the English language. The arbitral award shall be final and binding upon all parties and shall be enforceable in accordance with its terms. The award of the arbitrator may be monetary damages or an injunction. In no event may the arbitrator issue an award of any form of exemplary or punitive damages. Nor may the arbitrator make any ruling, finding or award that does not conform to the terms of this Agreement. Neither Party nor the arbitrator may disclose the results of any arbitration hereunder, without the prior written consent of the Parties or unless the implementation of a remedy sought by a party and awarded by the arbitrator requires disclosure of the arbitration result. The Parties shall keep confidential any proprietary information, trade secrets or other non-public information that is disclosed in discovery. The arbitrator shall have the authority to award

sanctions for unauthorized disclosure of the results of the arbitration or confidential information. The award of the arbitrator shall be accompanied by a written explanation of the basis for the award.

Daesung Industrial Co., Ltd.
By: _____
On: 6/2E/2014



Quietside Corporation
By: _____
On: 6/19/2014



Redacted

