UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| LEROY DREIBELBEIS, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | Cause No. 3:17-CV-100-JD |
| DAESUNG CELTIC ENERSYS CO. LTD, CHALLENGER SUPPLY HOLDINGS, INC., and MENARD, INC., | ) ) ) |  |
| Defendants. | ) |  |
| CHALLENGER SUPPLY HOLDINGS, INC., | ) |  |
| Cross-Claim Plaintiff, | ) |  |
| v. | ) |  |
| DAESUNG CELTIC ENERSYS CO. LTD., | ) |  |
| Cross-Claim Defendant. | ) |  |

## OPINION AND ORDER

Plaintiff Leroy Dreibelbeis ("Plaintiff") filed this product liability action alleging that his building was damaged by a fire on January 5, 2015, when his water heater (a Quietside DPW-120A S-Line Condensing Instantaneous Tankless Water Heater) overheated [DE 4]. He claims that damages are due from the following Defendants: Mernard, Inc. ("Menard's"), who sold the water heater; Challenger Supply Holdings, Inc. ("Challenger Supply"), who distributed it; and Daesung Celtic Enersys Co., Ltd. ("Daesung"), who manufactured it. Challenger Supply has filed a cross-claim against Daesung seeking indemnity in the event that Plaintiff prevails [DE 10 at 11-12].

Daesung seeks dismissal of both claims pursuant to Rule 12(b)(2) for lack of personal jurisdiction; or, in the alternative, pursuant to Rule 12(b)(6) for failing to state a claim. For the reasons stated below, the Court concludes that it lacks jurisdiction over Daesung and declines to address the sufficiency of the claims.

## I. FACTUAL BACKGROUND

In 2011, Plaintiff purchased a Quietside water heater manufactured by Daesung from a Menard's store located in Mishawaka, Indiana [DE 42-1, Affidavit of Leroy Dreibelbeis]. Plaintiff had the water heater properly installed in a building on his property located in New Carlisle, Indiana. *Id*. On January 5, 2015, the water heater caught fire which resulted in damage to Plaintiff's real and personal property. *Id.* Plaintiff later learned that a recall on the water heater had been issued in 2014,[1] due to reports that the product could overheat and posed a fire hazard. *Id.*

Quietside, LLC[2] had the right to distribute Daesung's tankless water heaters throughout the United States, Mexico, and Canada, and as the exclusive distributer in the United States, Quietside sent an undisclosed number of water heaters to Menard's stores located in Indiana [DE 42-1 at 7-10; DE 54-1, Affidavit of Challenger Supply's former director]. Given the distribution agreement, Daesung also tasked Quietside with organizing a sales service network throughout the United States by designating dealers, advertising Daesung's products, and displaying

---

[1] The recall notice indicates that approximately 29,000 water heaters were sold in the United States, and another 2,220 units were sold in Canada, through independent dealers and via the internet, including Amazon [DE 42-1 at 7-10]. No details were provided concerning websites maintained or internet sales made by Daesung itself. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.,* 751 F.3d 796, 803 (7th Cir. 2014), as corrected (May 12, 2014) (noting that "operation of an interactive website does not show that the *defendant* has formed a contact with the forum state.") (emphasis in original).

[2] Challenger Supply became the successor in interest to Quietside, LLC after it ceased distributing Daesung tankless water heaters [DE 54-1 at 1].

products at tradeshows [DE 54-1]. When Daesung initiated the voluntary recall of the water heater in 2014, Daesung hired legal counsel and advisors in the United States at its own expense to facilitate and control the recall. *Id*. But Daesung had no knowledge of Quietside's distribution networks, the forums targeted for the sale of products, or the locations where the instant product was actually sold [DE 43-1; DE 44-1, Affidavit from the Head of Daesung's Overseas Business Team]; and so, Quietside had to provide Daesung with "a confidential list of all Quietside distributors and retailers of the subject products." [DE 54-1].

Daesung is a corporation existing under the laws of the Republic of Korea, where its principal place of business is also located. *Id*. Daesung affirms that aside from the above facts, it has no contacts with Indiana outside of defending this lawsuit [DE 34-2; DE 43-1; DE 44-1]. Daesung reiterates that neither Plaintiff nor Challenger Supply have offered evidence suggestive of Daesung's having additional contacts with Indiana.

## II. STANDARD OF REVIEW

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a party may move to dismiss for lack of personal jurisdiction. Once a defendant moves to dismiss on that basis, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). To that end, the parties may submit, and a court may consider, materials outside of the pleadings. *Id.* In ruling on such a motion, a court must first determine whether the plaintiff has made out a *prima facie* case of personal jurisdiction. *Id.*; *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). At that stage, a court must "take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); *Purdue*, 338 F.3d at 782. If the plaintiff meets that initial burden but there are material factual disputes, the Court must then hold an evidentiary hearing, at which point the

plaintiff must prove any facts supporting jurisdiction by a preponderance of the evidence. *Hyatt*, 302 F.3d at 713.

## III. DISCUSSION

The Court has personal jurisdiction over a defendant to the same extent a state court in this forum could exercise personal jurisdiction over that defendant. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014). Here, Indiana's long-arm statute permits its courts to exercise personal jurisdiction to the full extent permitted under federal law. *Id.*; *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006) ("Indiana's long-arm provision now extends to the limits of the Constitution."). Therefore, to determine whether it may exercise jurisdiction over Daesung, the Court must decide "whether 'the exercise of jurisdiction comports with the limits imposed by federal due process.'" *Advanced Tactical*, 751 F.3d at 800 (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 319 (1945)). This requires that "individuals have 'fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign . . . .'" *Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977)).

"Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), and the litigation results from alleged injuries that 'arise out of or relate to' those activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)." *Burger King*, 471 U.S. at 472–73. "The inquiry whether a forum State may assert

4

specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden*, 134 S. Ct. at 1121 (quoting *Keeton*, 465 U.S. at 775). The "constitutional touchstone" for specific jurisdiction "remains whether the defendant purposefully established 'minimum contacts' in the forum." *Burger King*, 471 U.S. at 474. Furthermore, the relation between the defendant and the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum . . ." *Id*. (quoting *Burger King*, 471 U.S. at 475). Contacts between the plaintiff or other third parties and the forum do not satisfy this requirement. *Id*.; *see Advanced Tactical*, 751 F.3d at 801.

A party may also be subject to general jurisdiction, meaning jurisdiction over matters unrelated to the party's connection with the forum State, where the party's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Ties Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). Here, Plaintiff and Challenger Supply focus solely on specific jurisdiction (and in fact, Plaintiff concedes that general jurisdiction is lacking [DE 42 at 4]). Therefore, they make no effort to establish that Daesung is subject to general jurisdiction in Indiana. Instead, the opponents of Daesung's motion to dismiss argue that the Court has specific jurisdiction over Daesung through the stream of commerce theory. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980). The stream of commerce theory "refers to the movement of goods from manufacturers through distributors to consumers . . .". *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011).

The stream of commerce theory holds that, in some scenarios, putting a product into the stream of commerce "with the expectation that they will be purchased by consumers within the foreign state" may give rise to personal jurisdiction. *World–Wide Volkswagen*, 444 U.S. at 298

(observing that a defendant may in an appropriate case be subject to jurisdiction without entering the forum, such as where manufacturers or distributors "seek to serve" a given State's market); *but see Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.,* 480 U.S. 102, 112 (1987) (plurality opinion of O'Connor, J.) (specific jurisdiction may lie over a foreign defendant that places a product into the "stream of commerce" while also "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.").

The Supreme Court again considered jurisdiction premised on the stream of commerce theory in *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). In that case, Nicastro brought a products liability action against a British manufacturer (J. McIntyre Machinery, Ltd.), after he seriously injured his hand while using a machine manufactured by it. 564 U.S. at 878. The manufacturer argued that the New Jersey state court lacked personal jurisdiction over it because it neither marketed goods in the state nor shipped them there. *See id*. Instead, it sent the goods to a U.S. distributor, not under the manufacturer's control, who marketed the goods at several conventions—none in New Jersey. *See id*. In addition, no more than four machines (including the machine that caused the injury) ended up in New Jersey. *See id*.

In a split decision, the Supreme Court reversed the New Jersey Supreme Court, and held that the British manufacturer was not subject to jurisdiction under a stream of commerce theory. *Id.* at 886-87 ("the stream-of-commerce metaphor cannot supersede either the mandate of the Due Process Clause or the limits on judicial authority that Clause ensures."). Justice Kennedy, writing for the plurality opinion, stated that, "the defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a

general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *Id*. at 882.

With this precedent in mind, and focusing on the relationship among Daesung, Indiana, and the litigation, *see Walden*, 134 S. Ct. at 1121, the facts demonstrate that Daesung distributed the water heater throughout the United States exclusively through Challenger Supply (a non-Indiana entity). And although Daesung "tasked" Quietside with developing a network to promote the sales, nothing indicates that Daesung executed control over that distribution. In fact, the opposite is true according to the facts of record—that is, Daesung had no knowledge of (and the Court has not been provided information concerning) Quietside's distribution networks, the forums Quietside targeted for the sale of products, or the locations where the instant product was actually sold (other than Plaintiff's purchase of it from an Indiana Menard's). *See, e.g., O'Neal v. Bumbo Int'l Tr.*, 16 F. Supp. 3d 952, 960 (S.D. Ind. 2014) (reasoning that Bumbo purposefully exploits the Indiana market by utilizing distributors with the expectation and knowledge that Bumbo Seats will be sold to customers in Indiana). Moreover, Daesung never derived any revenue from Indiana and did not sell products with the purpose or intent to target the Indiana market. And although it is known that Plaintiff suffered damages in Indiana, there are no facts establishing the total number of water heaters that were marketed for sale, entered into, or were otherwise sold in Indiana, such that one could infer Daesung expected its products to be sold in Indiana. It is true that Daesung handled recalling the water heaters from the United States. But again, Plaintiff and Challenger Supply fail to indicate how the recall process resulted in Daesung's having contacts, if any, with the State of Indiana.

The burden to prove specific jurisdiction is on the non-movants. Both the Plaintiff and the cross-claimant Challenger Supply have failed to meet that burden. The fact that a Daesung

product, distributed in the United States via an independently operating Quietside, ended up on Indiana shelves unbeknownst and unexpected by Daesung, and then caused injury to an Indiana resident's property, is insufficient to make out a *prima facie* case of personal jurisdiction over Daesung in Indiana. *See Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 551 (7th Cir. 2004) ("With the free flow of commerce within the United States today, it may seem counterintuitive that a foreign manufacturer . . . who sells goods to a distributor in the United States should not be assumed to have the expectation that its goods may end up for sale in any one of the fifty states. But the Supreme Court stressed in *World–Wide Volkswagen* that, although the United States was meant to be a 'common market,' state lines are not 'irrelevant for jurisdictional purposes.' For this reason, at least in diversity cases, personal jurisdiction may not be exercised over a nonresident defendant unless 'minimum contacts' between the particular state in which the court sits and the defendant have been established.") (internal citation and citation omitted). Even under the more permissive stream of commerce theory, *see Dehmlow v. Austin Fireworks*, 963 F.2d 941, 947 (7th Cir. 1992) (recognizing the split of Supreme Court authority in *Asahi* on the issue), it cannot be said on the present record that Daesung delivered its products into the stream of commerce with the expectation or knowledge that it would be purchased by consumers in Indiana. There may well have been other facts that Plaintiff and Challenger Supply could have demonstrated in support of jurisdiction, but those facts have not been presented.

*World Wide Volkswagen* also emphasized that exercising jurisdiction over a defendant must be "reasonable" in order to be proper. 444 U.S. at 292-94 (defendant's contacts with the forum State must be such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'") (citations omitted). The factors which form consideration of the fairness of the exercise of personal jurisdiction are (1) the burden on the defendant; (2) the

interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of individual States in furthering fundamental substantive social policies. *N. Texas Steel Co. v. R.R. Donnelley & Sons Co.*, 679 N.E.2d 513, 519 (Ind. Ct. App. 1997) (citing *Asahi*, 480 U.S. at 113–15). While the State of Indiana certainly has a strong interest in protecting its citizens from defective products, "the Constitution commands restraint before discarding liberty in the name of expediency." *J. McIntyre Mach., Ltd.*, 564 U.S. at 887 ("In products-liability cases like this one, it is the defendant's purposeful availment that makes jurisdiction consistent with "traditional notions of fair play and substantial justice."). Moreover, Plaintiff does not contend that the dismissal of Daesung prevents him from seeking recovery from the remaining Defendants (although it likely prevents Challenger Supply from seeking indemnity). The burden that would be imposed on this foreign defendant by being haled into U.S. Courts is quite high, especially given that at no time did Daesung engage in any activities in Indiana that reveal an intent to invoke or benefit from the protection of its laws. It cannot be said that it had fair warning that its activities may subject it to the foreign jurisdiction of Indiana. Thus, Indiana is without power to adjudge the rights and liabilities of Daesung, and its exercise of jurisdiction would violate due process.

### IV.  CONCLUSION

The Plaintiff and the cross-claimant have both failed to make out a *prima facie* showing of personal jurisdiction over Daesung. Therefore, the Court **GRANTS** Daesung's Rule 12(b)(2) motion and **DISMISSES WITHOUT PREJUDICE** the Plaintiff's suit against Daesung and Challenger Supply's cross-claim against Daesung.

The Court notes that it is unable to confirm the citizenship of the remaining parties so as to ensure that diversity jurisdiction exists. *See Kromrey v. U.S. Dep't of Justice*, 423 F. App'x

624, 626 (7th Cir. 2011) ("There is no priority among grounds for not addressing the merits; thus a district judge may with equal propriety dismiss a suit for lack of subject-matter jurisdiction, lack of personal jurisdiction, or improper venue."). While Menard's notice of removal [DE 1] indicates that Challenger Supply is a citizen of Delaware and Texas [DE 1], Challenger Supply represents that it is no longer in business [DE 54-1]. And, if Challenger Supply is not presently operating, then its citizenship will vary depending upon the laws of the state of incorporation. *See Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 528 (7th Cir. 2002) (noting that the question of what state a corporation is a citizen of if its corporate charter has been revoked depends on the status of such an entity under the law of the state that granted (and later revoked) the charter). Therefore, if the relevant state's law does not permit a dissolved corporation to sue (or be sued) in its own name, then it will need to be determined by Menard's whether the citizenship of each trustee, director, member, shareholder, or other principal must be pled. *See e.g., Colon v. SmithKline Beecham Corp.*, No. CIV.09-1073GPM, 2010 WL 46523, at *3 (S.D. Ill. Jan. 5, 2010) ("[I]f the law under which a dissolved corporation was incorporated does not permit the corporation to sue and be sued in its own name after dissolution, then the citizenship of the dissolved corporation for diversity purposes is the citizenship of the trustee or trustees of the dissolved corporation."). Thus, Menard's is directed to file a notice of citizenship setting forth sufficient facts to support this Court's having diversity jurisdiction over this case. Failure to file the notice on or before **July 27, 2018** will result in the remand of this action back to the St. Joseph Superior Court.

SO ORDERED

ENTERED: June 27, 2018

                                                  /s/ JON E. DEGUILIO
                                      Judge
                                      United States District Court